COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Russell and Malveaux
Argued at Norfolk, Virginia

ROBERT WELDON DAYVON YERLING, S/K/A
 ROBERT WELDON DAYVON YEARLING

v.      Record No. 1705-18-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WILLIAM G. PETTY
FEBRUARY 18, 2020

FROM THE CIRCUIT COURT OF THE CITY OF CHEAPEAKE
Timothy S. Wright, Judge

A. Robinson Winn, Deputy Public Defender, for appellant.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Robert Weldon Dayvon Yerling was convicted in a bench trial of possession of

Oxycodone, in violation of Code § 18.2-250.  On appeal, Yerling argues that the trial court erred

in denying his motion to strike the charge of possession of Oxycodone.  For the following

reasons, we agree and reverse the conviction.

## I.  BACKGROUND

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  Vasquez v. Commonwealth, 291 Va. 232, 236 (2016)

(quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)).  "Viewing the record through

this evidentiary prism requires us to 'discard the evidence of the accused in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth

and all fair inferences to be drawn therefrom.'"  Commonwealth v. Perkins, 295 Va. 323, 323-24

(2018) (quoting Vasquez, 291 Va. at 236).

In early 2016, Officer Keith Ewell, of the Chesapeake Police Department, initiated a traffic stop of a car for speeding. Yerling was the driver and the only person in the car. Yerling pulled over immediately after Officer Ewell initiated the stop—"[t]here was no problem with the stop." When he approached the driver at the driver's side window, Officer Ewell detected an odor of marijuana. Additionally, Officer Ewell found "it odd that being in January, . . . [Yerling] was breathing heavy and almost sweating." To Officer Ewell, Yerling seemed "nervous." After Officer Ewell's stop and initial interaction at the driver's side window, Officer Travis Murden, of the Chesapeake Police Department, took the lead role in the stop. Officer Murden detected a "faint" odor of marijuana and asked Yerling to step out of the car so that Officer Murden could search the car.

Officer Murden found "a small corner baggy of marijuana inside the center console," which was between the driver's seat and the front passenger seat. Also in the console was a balled up sheet of notebook paper. Inside the notebook paper was a pink pill with "K-56" on it. Officer Ewell testified that he "called Poison Control to get an idea of what [the pill] might be." Police eventually sent the pill to the Virginia Department of Forensic Science where it was confirmed to be Oxycodone, a Schedule II substance. There was no testimony at trial confirming who owned the car Yerling was driving, how long he had been driving it that day, or where, in relation to the small amount of marijuana, the balled-up sheet of notebook paper was found.

At the conclusion of the Commonwealth's evidence, Yerling made a motion to strike based on insufficient evidence that Yerling knew that the pill was in the car or that he knew it was Oxycodone. The trial court denied the motion and subsequently found Yerling guilty of possession of Oxycodone, a Schedule II substance.

## II. ANALYSIS

On appeal, Yerling argues that the trial court erred in denying his motion to strike because there was insufficient evidence to support the trial court's finding that Yerling was aware of the presence and character of the Oxycodone.[1] We agree.

When considering the sufficiency of the evidence presented below, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "We must instead ask whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

In order to convict a person of illegal drug possession, the Commonwealth must prove beyond a reasonable doubt that the accused was aware of the presence and character of the drug and that the accused consciously possessed it. Jones v. Commonwealth, 17 Va. App. 572, 574 (1994); Andrews v. Commonwealth, 216 Va. 179, 182 (1975). "Mere proximity to a controlled drug is not sufficient to establish dominion and control." Drew v. Commonwealth, 230 Va. 471, 473 (1986). In addition, ownership or occupancy of the premises where the drug is found does

---

[1] Yearling's assignment of error states, "The trial court erred in denying the appellant's motion to strike the charge of possession of oxycodone." The Commonwealth argues that this assignment of error fails to comply with the requirements of Rule 5A:12(c)(1). We conclude that the assignment of error adequately points to a specific ruling of the trial court that appellant believes is in error. Findlay v. Commonwealth, 287 Va. 111, 113 (2014) (approving an assignment of error stating, "The Petitioner/Appellant assigns as error the trial court's denial of his Motion to Suppress all of the seized videos that came from the defendant's computer, and his computer hard drive, and all derivatives thereof.").

not create a presumption of possession. Code § 18.2-250.1(A); Garland v. Commonwealth, 225 Va. 182, 184 (1983). Nonetheless, these factors may be considered in deciding whether an accused possessed the drug. Lane v. Commonwealth, 223 Va. 713, 716 (1982). "[P]roof of actual possession is not required; proof of constructive possession will suffice." Walton v. Commonwealth, 255 Va. 422, 426 (1998). Constructive possession may be established when there are "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control." Drew, 230 Va. at 473 (quoting Powers v. Commonwealth, 227 Va. 474, 476 (1984)).

Here, there is insufficient evidence to prove that Yerling was aware of the *presence* of the substance. See id. Yerling made no statements, incriminating or otherwise, that would lead the factfinder to infer that he was aware of the presence of the pill. The testimony at trial was that the pill was out of sight, in a closed console, wrapped in a crumpled piece of paper, in a car that may or may not have belonged to Yerling. The only incriminating fact before the trial court was Yerling's proximity to the pill. And, as this Court noted in Coward v. Commonwealth, 48 Va. App. 653, 658 (2006), mere occupancy and proximity, although factors to be considered among the totality of the circumstances, are insufficient standing alone to prove a defendant's guilty knowledge of illegal drugs. See also Drew, 230 Va. at 473.

In Coward, police stopped a car in which Coward was the front passenger. Coward, 48 Va. App. at 656. When he approached the car, the police officer noticed a "hard white substance inside a . . . clear plastic baggie" on the console between the driver's seat and passenger seat. Id. The substance was tested and determined to be crack cocaine. Id. The officer testified at trial that neither Coward nor the driver of the car made any suspicious movements or attempts to hide the cocaine as he approached the car. Id. After the officer had the driver and Coward step out of

- 4 -

the car, the driver said that the car belonged to his mother and that he had been using the car "all evening." Id. The driver confirmed to the officer that no one else had driven or been inside the car. Id. There was no evidence of any statements made by Coward. Id. This Court reversed the conviction, noting that the only facts that raised an inference of Coward's knowledge of the presence and character of the cocaine were his occupancy of the car and proximity to the cocaine. Id. at 658.

Here, like in Coward, occupancy of the car and proximity to the controlled substance are the only facts that raise an inference of Yerling's knowledge of the presence and character of the drugs. There was no testimony in this case as to who owned the car, that Yerling made any furtive movements, or that Yerling made any statements lending to an inference that he knew the pill was in the car. Additionally, unlike Coward where the cocaine was out in the open, here the pill was *inside* the console, out of sight. Accordingly, we hold that occupancy of a car and proximity to a controlled substance, without more, are insufficient to prove that an appellant is aware of the presence and character of a controlled substance. Id.

The Commonwealth argues that because there was an odor of marijuana about the car, and the marijuana and the pill were both inside the console, the trial court could infer that Yerling must have also smelled the marijuana and therefore knew it was in the car and accordingly knew the pill was in the car. Assuming that Yerling was familiar with the scent of marijuana and that the odor of marijuana was sufficient to place him on notice of the marijuana in the car, nothing about an odor of marijuana suggests the presence of Oxycodone. Thus, even if he was aware of the presence of the marijuana, that does not establish he was also aware of the presence of the pill.

Moreover, there was no evidence to support the inference that Yerling was aware of the *character* of the substance. To sustain a conviction for possession of a controlled substance,

- 5 -

"'[t]he Commonwealth must also establish that the defendant intentionally and consciously possessed [the drug] *with knowledge of its nature and character*.' That knowledge is an essential element of the crime." Young v. Commonwealth, 275 Va. 587, 591 (2008) (quoting Burton v. Commonwealth, 215 Va. 711, 713 (1975)). In Young, a pill bottle with someone else's name on it was found in Young's purse, which was in the car she was driving. Id. at 589. The bottle label identified the contents as "OxyContin" but contained two blue tablets and six white tablets. Id. Police could not determine the nature of the pills without sending them to the lab for testing. Id. The Supreme Court reversed Young's conviction for possession of a controlled substance. Id. at 593. The Court explained that "the contents of the pill bottle . . . gave no indication of their character." Id. at 592. The police officer "could not determine [the pills'] nature without submitting them for laboratory analysis, and there [was] no reason to infer that the defendant was any better informed." Id. Furthermore, the Supreme Court specifically rejected this Court's holding in Josephs v. Commonwealth, 10 Va. App. 87 (1990) (*en banc*), that "[p]ossession of a controlled drug gives rise to an inference of the defendant's knowledge of its character." Young, 275 Va. at 592. Cf. Christian v. Commonwealth, 59 Va. App. 603, 614 (2012) (finding sufficient evidence of knowledge of the nature and character of crack cocaine where the appellant found the drug on the ground and kept it in his pants pocket because he thought he could sell it).

Here, like in Young, the nature of the pill was not readily apparent. The pill was simply described as a pink pill with a marking on it. Officer Murden did not know what kind of substance comprised the pill found in the car Yerling was driving, and there was no evidence to indicate that Yerling was any more informed. Officer Ewell even testified that he called poison control to try to determine the nature of the pill. The pink pill was inconspicuously located inside a balled-up piece of notebook paper and merely had "K-56" inscribed on it. Certainly, the notebook paper "gave no indication of [the pill's] character." Young, 275 Va. at 592. In fact,

the crumpled paper was just as indicative of a piece of trash as it was an intentional hiding place. Police "could not determine [the pill's] nature without submitting [it] for laboratory analysis, and there [was] no reason to infer that the defendant was any better informed." Id. Accordingly, the trial court erred in finding that the evidence was sufficient to prove that Yerling was aware of the nature and character of the pill.

## III. CONCLUSION

Because the Commonwealth presented insufficient evidence to demonstrate that Yerling was aware of either the presence or nature of the single pill found in the console of the car Yerling was driving, the conviction is reversed, and the indictment dismissed.

Reversed and dismissed.